## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **INDEPENDENCE BLUE CROSS** | : | **NO. 23-1530** |

### MEMORANDUM

**Savage, J.**                                                      **January 22, 2024**

Plaintiff Jane Doe, a transgender woman, contends that defendant Independence Blue Cross ("IBX") discriminated against her when it denied insurance coverage for facial femininization surgeries ("FFS") for treatment of her gender dysphoria.  She contends that the denial was based on impermissible gender stereotyping in violation of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116(a), and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681, *et seq. See Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–52 (1989) (holding that gender stereotyping constitutes actionable sex-based discrimination).

To show IBX engaged in gender stereotyping, Doe relies upon language used by two consultants hired to review Doe's appeal of IBX's denial.  In a report submitted at the first-level appeal, Dr. Ali Soltani noted that "photographs were not enclosed to demonstrate a facial appearance outside the broad range of normal for the female gender."[1]  At the third and final-level appeal, after Doe submitted photographs of herself, independent consultant Dr. Michael Ziev upheld the denial of coverage.[2]   Dr. Ziev

---

[1] Peer Review Rep., Sept. 18, 2020, at 336 ["First Peer Review Rep."] (attached as Ex. 6 to Statement of Undisputed Facts of Def., IBX, ["IBX's SOMF"], ECF No. 55-6).

[2] Notice of Final External Review Determination, June 7, 2021, at 245 ["Final Determination"] (attached as Ex. 13 to IBX's SOMF, ECF No. 55-13).

concluded that the "clinical documentation provided does not objectively demonstrate facial features outside of the norm of an average adult female variation."[3]

Moving for summary judgment, IBX disavows these statements, claiming they originated independently of IBX.[4]  It argues that the independent consultants' gender stereotyping language did not form the basis of its decision and does not demonstrate intentional sex-based discrimination by IBX.[5]

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering the motion, we draw all reasonable inferences in Doe's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003).  Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment.  *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted).  Credibility determinations, the drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury.  *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 135 (3d Cir. 2016) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

---

[3] *Id.* at 248.

[4] Mem. of L. in Supp. of Mot. for Summ. J. of Def., IBX, at 1–2 ["IBX's Br."], ECF No. 56.

[5] *Id.* at 11–12.

The disputed dispositive issue of fact is whether IBX intentionally discriminated against Doe on the basis of her nonconformity to a gender stereotype.  A reasonable jury could find that IBX adopted the gender stereotyping language and based its decision to deny coverage, at least in part, on it.

IBX representatives repeatedly cited the gender stereotyping language throughout Doe's appeal.  In explaining IBX's denial of Doe's first-level appeal, Wendy Luckey, an IBX Senior Appeals Specialist, quoted Dr. Soltani's "broad range of normal for the female gender" language.[6]  After requesting a second-level appeal, Doe emailed Caitlin Reis, an IBX Appeals Specialist, for clarification as to "the broad range of female standards that has been referenced by ibx."[7]  In response, Reis referred Doe to "attached documentation regarding the broad range of female standards as referenced in the first level appeal."[8]  The attached document was a second report from Dr. Soltani, explaining that "objective findings of facial features outside of the normal adult female variation must be demonstrated by photographs and/or facial measurements."[9]

Finally, IBX's corporate designee testified that IBX is bound by the determinations made by independent reviewers at the final stage of appeal.[10]   In this case, the

---

[6] Letter, Sept. 23, 2020, at 275 (attached as Ex. 7 to IBX's SOMF, ECF No. 55-7); Dep. of Wendy Luckey 27:6–29:20 (attached as Ex. 8 to IBX's SOMF, ECF No. 55-8).

[7] Email from Caitlin Reis, at 351 (attached as Ex. 10 to IBX's SOMF, ECF No. 55-10).

[8] *Id.*

[9] *Id.* at 353.

[10] *See* Dep. of George Fenimore 60:10-15 ["Fenimore Dep."] (attached as Ex. B to Mem. of L. in Supp. of the Resp. of Pl., Jane Doe, in Opp'n to the Mot. for Summ. J. of Def., IBX ["Pl.'s Resp."], ECF No. 63-2).

independent reviewer, Dr. Ziev, found that Doe's photographs do not demonstrate facial features "outside of the norm of an average adult female variation."[11]

In light of this evidence, a reasonable jury could find that IBX relied on gender stereotyping language in denying Doe coverage for FFS.  Therefore, summary judgment is inappropriate with respect to Doe's claim that IBX intentionally discriminated against her on the basis of sex.

*Wrongful Denial of Benefits*

Doe asserts a wrongful denial of benefits claim under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  IBX contends that Doe pleads this claim against Personal Choice Health Benefits Plan ("the Plan") only.[12]  Because Doe has not properly or timely served the Plan pursuant to Federal Rule of Civil Procedure 4(m), we do not address Doe's claim against the Plan.

Doe maintains that she also asserts the wrongful denial of benefits claim against IBX.[13]

Because IBX, as plan administrator, retained discretionary authority to determine Doe's eligibility for coverage, we review its decision under an "abuse of discretion" or "arbitrary and capricious" standard.  *Bergamatto v. Bd. of Trustees of the NYSA- ILA Pension Fund*, 933 F.3d 257, 263–64 (3d Cir. 2019) (explaining that the two standards are "effectively the same").  First, we determine whether the language of the ERISA plan is ambiguous, that is, "subject to reasonably alternative interpretations."  *Id.* at 264

---

[11] Final Determination, at 248.

[12] IBX's Br. at 12.

[13] Statement of Undisputed Facts of Pl., Jane Doe, Resp. ¶ 18, ECF No. 64.

(citation omitted).   If the terms of the plan are ambiguous, we must then determine whether IBX's interpretation was "reasonably consistent" with the plan's text.  *Id.*

Under the terms of IBX's gender dysphoria treatment policy, IBX only covers FFS if "medical necessity demonstrating a functional impairment can be identified."[14]  If, on the other hand, the procedures are deemed cosmetic, they are excluded from coverage.[15]

How the IBX consultants interpreted this language reveals how it can be considered ambiguous.  In interpreting this provision at the first and third levels of Doe's appeal, Dr. Soltani and Dr. Ziev determined that her FFS was cosmetic and not medically necessary.[16]  In interpreting the same provision at the second-level of appeal, however, independent reviewer Dr. Michael Wheatley determined that Doe's FFS was medically necessary and should be covered.[17]

There is an issue of fact as to whether IBX's interpretation was "reasonably consistent" with the text of the cosmetic procedure exclusion.  The exclusion provides that medical necessity must be demonstrated by a "functional impairment."[18]  The final denial of coverage concluded that Doe did not meet this criterion because there were no "actual physical impairments present, only psychological impairments."[19]

---

[14] Med. Pol'y Bull., at 2 (attached as Ex. I to Pl.'s Resp., ECF No. 63-9).

[15] *Id.*

[16] First Peer Review Rep., at 335; Final Determination, at 245.

[17] *See* Peer Review Rep. Oct. 23, 2020, at 337 (attached as Ex. 11 to IBX's SOMF, ECF No. 55-11).

[18] Med. Pol'y Bull., at 2.

[19] Final Determination, at 245; *see also* Fenimore Dep., at 17:22–25 ("[I]t would be considered a cosmetic service if there was not a type of physical impairment, a physical defect, or physical deformity.").

IBX's gender dysphoria policy does not limit "functional impairment" to physiological defects.[20]   IBX's own definition of gender dysphoria refers to "[c]linically significant distress or impairment in social, occupational, or other important areas of functioning."[21]   A reasonable fact finder could find that IBX applied a physical defect requirement and ignored Doe's impaired social and occupational functioning in a way that is not "reasonably consistent" with the plan's text.

*Punitive and Emotional Distress Damages*

To the extent Doe is claiming punitive or emotional distress damages, she is not entitled to them as a matter of law.

Neither punitive damages nor emotional distress damages are recoverable in actions under nondiscrimination provisions of Spending Clause statutes.  *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022) (precluding emotional distress damages in discrimination action brought under the Rehabilitation Act and ACA); *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (holding that punitive damages are not available in discrimination actions brought under Title VI or the Rehabilitation Act).  Because Title IX and the ACA are Spending Clause statutes, Doe cannot recover punitive or emotional distress damages on her discrimination claim.  *See, e.g., Richard Roe W.M. v. Devereux Found.*, 650 F. Supp. 3d 319, 335 (E.D. Pa. 2023) ("[T]he Supreme Court has foreclosed punitive and emotional distress damages in Title IX claims.").

Likewise, the only remedies available under ERISA section 1132(a)(1)(B) are (1) recovery of benefits due under the plan, (2) enforcement of rights under the plan, and (3)

---

[20] *See* Med. Pol'y Bull.

[21] *Id.* at 3.

clarification of rights to future benefits under the plan.  29 U.S.C. § 1132(a)(1)(B); *see also Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 135 (1985) (emphasis in original) ("The civil enforcement provisions of [§ 1132(a)] provide strong evidence that Congress did *not* intend to authorize other remedies that it did not incorporate expressly.").  Therefore, Doe cannot recover punitive or emotional distress claim on her ERISA claim.